DMC/JKH2012R00619

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Claire C. Cecchi |
| | : | |
| v. | : | Criminal No. 12-447 (CCC) |
| | : | |
| FRANCISCO TORRELLAS, | : | |
| a/k/a "Francisco Fordham, Jr.," | : | 18 U.S.C. §§ 371, 1512(b)(1) & (j), |
| a/k/a "Dream," | : | 1591(a)(1) & (c), 1952(a)(1) & (3), |
| a/k/a "Daddy," | : | 2422(a), 2423(a) and 2 |
| a/k/a "Pretty" | : | |
| | : | |

## S U P E R S E D I N G   I N D I C T M E N T

The Grand Jury in and for the District of New Jersey, sitting in

Newark, charges:   At all times relevant to this Superseding Indictment:

1. Defendant FRANCISCO TORRELLAS ("TORRELLAS") was a resident

   of Pennsylvania.

2. Co-conspirator #1 was a resident of Pennsylvania.

3. Co-conspirator #2 was a resident of Pennsylvania.

4. Victim #1, was a minor who had not attained the age of 18.

## COUNT ONE

(Conspiracy to Use an Interstate Facility in Aid of Prostitution Business)

### The Conspiracy

1.     From in or about November 2010 through in or about February 2013, in the District of New Jersey and elsewhere, defendant

FRANCISCO TORRELLAS,
a/k/a "Francisco Fordham, Jr.,"
a/k/a "Dream,"
a/k/a "Daddy,"
a/k/a "Pretty,"

did knowingly and intentionally conspire and agree with others to commit an offense against the United States, that is, to travel and cause to travel in interstate commerce and use and cause to be used facilities in interstate commerce, with the intent to distribute the proceeds of an unlawful activity and otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of that unlawful activity, that is, prostitution offenses, contrary to N.J. Stat. Ann. 2C:34-1(b)(2), and to thereafter perform acts to distribute the proceeds of the unlawful activity and otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of that unlawful activity, contrary to Title 18, United States Code, Sections 1952 (a)(1) and 1952 (a)(3).

### Object of the Conspiracy

2.     It was the object of the conspiracy for defendant TORRELLAS, Co-conspirator #1, Co-conspirator #2 and others to make money by running a

2

prostitution business through interstate travel and facilities and to distribute the proceeds of and otherwise promote, manage and carry on a prostitution business.

## **Manner and Means of the Conspiracy**

The Prostitution Business

3.      It was part of the conspiracy that defendant TORRELLAS was the manager of a prostitution business that operated in New Jersey, Pennsylvania and elsewhere.

4.      It was further part of the conspiracy that defendant TORRELLAS employed a number of women, including Co-conspirator #1, Co-conspirator #2, Victim #1, and Victim #2 to assist him in operating the prostitution business by, among other things, engaging in sex acts in exchange for money ("Prostitute Employees").

5.      It was further part of the conspiracy that defendant TORRELLAS received the proceeds earned by the Prostitute Employees.

6.      It was further part of the conspiracy that defendant TORRELLAS and others who assisted him in the prostitution business traveled from Pennsylvania to other states, including New Jersey to operate the prostitution business.

7.      It was further part of the conspiracy that defendant TORRELLAS and others used the internet to post advertisements for sexual services on the website Backpage.com.

3

8.     It was further part of the conspiracy, that defendant TORRELLAS and others booked hotel rooms in the New Jersey area and elsewhere.

9.     It was further part of the conspiracy, that defendant TORRELLAS and others sent text messages to carry on and manage the prostitution business.

10.     It was further part of the conspiracy, that defendant TORRELLAS developed rules for the Prostitute Employees to follow.

11.     It was further part of the conspiracy, that defendant TORRELLAS enforced those rules, by among other things, physically beating the women who he believed violated the rules of the organization.

12.     It was further part of the conspiracy, that defendant TORRELLAS used the telephone to manage, promote and carry on his prostitution business from the Essex County Correctional Facility (hereinafter "ECC").

13.     It was further part of the conspiracy that defendant TORRELLAS directed co-conspirators to wire money into his commissary account at the ECC, which funds were cash transfers and represented proceeds of the prostitution business.

**Overt Acts**

14.     In furtherance of the conspiracy and to effect the illegal object thereof, defendant TORRELLAS, Co-conspirator #1, Co-conspirator #2, and others committed and caused to be committed the following overt acts, among others, in the District of New Jersey and elsewhere:

a.   In or about May 2012, TORRELLAS caused Victim #1 to engage in a

4

sex act in exchange for money.

b.  In or about May 2012, TORRELLAS caused Victim #2 to travel from Pennsylvania to New Jersey to engage in sex acts in exchange for money.

c.  On or about June 24, 2012, defendant TORRELLAS received approximately $120 into his commissary account at the ECC via Western Union from Co-conspirator #2.

d.  On or about June 27, 2012, defendant TORRELLAS made a series of telephone calls to Co-conspirator #1 and discussed the prostitution business and demanded that Co-conspirator #1 deposit approximately $220 into his commissary account at the ECC.

e.  On or about July 1, 2012, defendant TORRELLAS caused approximately $500 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #2.

f.  On or about July 1, 2012, defendant TORRELLAS made a telephone call to Co-conspirator #1 and discussed the distribution of the unlawful proceeds from the prostitution business.

g.  On or about July 2, 2012, defendant TORRELLAS caused approximately $250 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #2.

h.  On or about July 4, 2012, defendant TORRELLAS caused approximately $250 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #2.

5

      i.  On or about July 4, 2012, defendant TORRELLAS caused approximately $250 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #1.

      j.  On or about July 8, 2012, defendant TORRELLAS caused approximately $300 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #2.

      k.  On or about July 10, 2012, defendant TORRELLAS made a telephone call to Co-conspirator #2 complaining about Co-conspirator #1's failure to wire proceeds into his commissary account at the ECC as he had previously directed.

      l.  On or about July 12, 2012, defendant TORRELLAS caused approximately $700 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #1.

      m. On or about August 1, 2012, defendant TORRELLAS caused approximately $300 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #2.

      n. On or about August 2, 2012, defendant TORRELLAS made a telephone call to Co-conspirator #2 and discussed the management of the prostitution business.

      o.  On or about August 5, 2012, defendant TORRELLAS caused approximately $300 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #1.

      p.  On or about August 6, 2012, defendant TORRELLAS caused

6

approximately $400 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #2.

q.  On or about August 10, 2012, defendant TORRELLAS made a telephone call to Co-conspirator #2 demanding approximately $6,000 a week from the Prostitute Employees who work for him.   On that call defendant TORRELLAS suggested that Co-conspirator #2 may want to work in Washington, D.C.

r.  On or about August 19, 2012, defendant TORRELLAS caused approximately $400 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #2.

s.  On or about August 21, 2012, defendant TORRELLAS made a series of telephone calls to Co-conspirator #1.   During those telephone calls defendant TORRELLAS: (1) learned of a new recruit for the prostitution business (the "Recruit"); (2) gave instructions to Co-conspirator #1 with respect to how to manage the Recruit; (3) spoke with the Recruit on the telephone; (4) described his success in an attempt to lure the Recruit and promote his business; (5) assigned a "working name" to the Recruit and notified Co-conspirator #1 of same; and (6) requested the Recruit's full name and contact information from Co-conspirator #1.

t.   On or about August 22, 2012, defendant TORRELLAS placed the Recruit on his visitor list at the ECC and identified her as his "sister."

u.  On or about November 26, 2012, defendant TORRELLAS caused

7

approximately $200 to be sent into his commissary account at the ECC via Western Union from Co-conspirator #1.

v. On or about December 16, 2012, defendant TORRELLAS made a telephone call to Co-conspirator #1, and discussed the prostitution business.

w. On or about December 17, 2012, defendant TORRELLAS caused approximately $200 to be sent into his commissary account at the ECC via Western Union from Co-Conspirator #1.

All in violation of Title 18, United States Code, Section 371.

8

## COUNTS TWO through SIX

(Use of Interstate Facility in Aid of Prostitution Business)

1. Paragraphs Two through Fourteen of Count One of this Superseding Indictment are hereby realleged and incorporated as though fully set forth herein.

2. On or about the dates set forth below, in the District of New Jersey and elsewhere, defendant

> FRANCISCO TORRELLAS,
> a/k/a "Francisco Fordham, Jr.,"
> a/k/a "Dream,"
> a/k/a "Daddy,"
> a/k/a "Pretty,"

did travel and cause to travel in interstate commerce and use and cause to be used facilities in interstate commerce, with the intent to distribute the proceeds of an unlawful activity and otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of that unlawful activity, that is, prostitution offenses, contrary to N.J. Stat. Ann. 2C:34-1(b)(2), and thereafter performed, and attempted to perform, and caused to be performed, acts to distribute the proceeds of the unlawful activity and to otherwise promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of that unlawful activity as follows:

9

| COUNT | DATE | USE OF INTERSTATE FACILITY | ACT PERFORMED THEREAFTER |
|-------|------|----------------------------|--------------------------|
| TWO | July 1, 2012 | The Wire Transfer Set Forth in Count One Paragraph 14(e) | The Telephone Call Set Forth in Count One Paragraph 14(f) |
| THREE | July 8, 2012 | The Wire Transfer Set Forth in Count One Paragraph 14(j) | The Telephone Call Set Forth in Count One Paragraph 14(k) |
| FOUR | August 1, 2012 | The Wire Transfer Set Forth in Count One Paragraph 14(m) | The Telephone Call Set Forth in Count One Paragraph 14(n) |
| FIVE | August 19, 2012 | The Wire Transfer Set Forth in Count One Paragraph 14(r) | The Acts Set Forth in Count One Paragraphs 14(s) & (t) |
| SIX | November 26, 2012 | The Wire Transfer Set Forth in Count One Paragraph 14(u) | The Telephone Call Set Forth in Count One Paragraph 14(v) |

All in violation of Title 18, United States Code, Sections 1952(a)(1) & 1952 (a)(3) and Section 2.

10

## COUNT SEVEN

(Trafficking of a Minor)

1.  In or about May 2012, in the District of New Jersey, and

elsewhere, defendant

FRANCISCO TORRELLAS,
a/k/a "Francisco Fordham, Jr.,"
a/k/a "Dream,"
a/k/a "Daddy,"
a/k/a "Pretty,"

did knowingly recruit, entice, harbor, transport, provide, obtain, and maintain

by any means a person, Victim #1, in and affecting interstate commerce,

knowing, and in reckless disregard of the fact, and having had a reasonable

opportunity to observe Victim #1, that Victim #1 had not attained the age of 18

years, and that such person would be caused to engage in a commercial sex act.

In violation of Title 18, United States Code, Sections 1591(a)(1) and

1591(c) and Section 2.

11

## COUNT EIGHT

(Transportion of Minor to Engage in Prostitution)

1. In or about May 2012, in the District of New Jersey, and elsewhere, defendant

FRANCISCO TORRELLAS,
a/k/a "Francisco Fordham, Jr.,"
a/k/a "Dream,"
a/k/a "Daddy,"
a/k/a "Pretty,"

did knowingly transport an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in sexual activity for which any person can be charged with a criminal offense.

In violation of Title 18, United States Code, Section 2423(a) and Section 2.

12

## **COUNT NINE**

(Coercion and Enticement to Engage in Prostitution)

1. In or about May 2012, in the District of New Jersey, and

elsewhere defendant

FRANCISCO TORRELLAS,
a/k/a "Francisco Fordham, Jr.,"
a/k/a "Dream,"
a/k/a "Daddy,"
a/k/a "Pretty"

knowingly persuaded, induced, enticed, and coerced, any individual, including

Victim #2 and others, to travel in interstate commerce from Pennsylvania to New

Jersey, to engage in prostitution and sexual activity for which any person can be

charged with a criminal offense and attempted to do so.

In violation of Title 18, United States Code, Section 2422(a) and

Section 2.

## COUNT TEN

(Obstruction)

1. From in or about May 2012 through August 2012, in the

District of New Jersey, and elsewhere, defendant

FRANCISCO TORRELLAS,
a/k/a "Francisco Fordham, Jr.,"
a/k/a "Dream,"
a/k/a "Daddy,"
a/k/a "Pretty,"

knowingly used intimidation, threatened and corruptly persuaded others, and

attempted to do so, with intent to influence, delay or prevent the testimony of

another person or persons, in an official proceeding, to wit, the trial in the matter

of United States of America v. Francisco Torrellas, Criminal Action No. 12-447

(CCC), in the United States District Court for the District of New Jersey.

In violation of Title 18, United States Code, Section 1512(b)(1) and

1512(j) and Section 2.

14

## FIRST FORFEITURE ALLEGATION

1.     The allegations contained in this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     The United States hereby gives notice to the defendant that, upon conviction of any of the offenses alleged in Counts One through Six or Ten in this Superseding Indictment, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), of any and all property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such offenses.

3.     If by any act or omission of the defendant, any of the property subject to forfeiture described above:

     a.     cannot be located upon the exercise of due diligence;

     b.     has been transferred or sold to, or deposited with, a third party;

     c.     has been placed beyond the jurisdiction of the court;

     d.     has been substantially diminished in value; or

     e.     has been commingled with other property which cannot be subdivided without difficulty;

15

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

## SECOND FORFEITURE ALLEGATION

1.     The allegations contained in this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 1594.

2.     The United States hereby gives notice to the defendant that, upon conviction of the offense alleged in Count Seven in this Superseding Indictment, the government will seek forfeiture, in accordance with Title 18, United States Code 1594, of any and all property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such offense and any and all property, real or personal, that constitutes or is derived from any proceeds that the defendant obtained, directly or indirectly, as a result of the commission of such offense.

3.     If by any act or omission of the defendant, any of the property subject to forfeiture described above:

   a.     cannot be located upon the exercise of due diligence;

   b.     has been transferred or sold to, or deposited with, a third party;

   c.     has been placed beyond the jurisdiction of the court;

   d.     has been substantially diminished in value; or

   e.     has been commingled with other property which cannot be subdivided without difficulty;

17

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

18

## THIRD FORFEITURE ALLEGATION

1.     The allegations contained in this Superseding Indictment are hereby realleged and incorporated by reference for the purpose of noticing forfeiture pursuant to Title 18, United States Code, Section 2428.

2.     The United States hereby gives notice to the defendant that, upon conviction of any of the offenses alleged in Counts Eight or Nine in this Superseding Indictment, the government will seek forfeiture, in accordance with Title 18, United States Code, Section 2428, of any and all property, real or personal, that was used or intended to be used to commit or to facilitate the commission of such offenses and any and all property, real or personal, that constitutes or is derived from any proceeds that the defendant obtained, directly or indirectly, as a result of the commission of such offenses.

3.     If by any act or omission of the defendant, any of the property subject to forfeiture described above:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

19

e.    has been commingled with other property which cannot be subdivided without difficulty;

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the above-described forfeitable property.

A TRUE BILL

FOREPERSON

PAUL J. FISHMAN
United States Attorney

20

CASE NUMBER:   *12-cr-447-CCC*

## United States District Court
## District of New Jersey

### UNITED STATES OF AMERICA

v.

FRANCISCO TORRELLAS,
a/k/a "Francisco Fordham, Jr.,"
a/k/a "Dream,"
a/k/a "Daddy,"
a/k/a "Pretty"

## SUPERSEDING INDICTMENT CHARGING
## VIOLATIONS OF

## 18 U.S.C. §§ 371, 1512(b)(1) & (j), 1591(a)(1) & (c),
## 1952(a)(1) & (3), 2422(a), 2423(a) and 2

### PAUL J. FISHMAN
*U.S. ATTORNEY*
*NEWARK, NEW JERSEY*

DANIELLE CORCIONE
JENNY R. KRAMER
*ASSISTANT U.S. ATTORNEYS*
*973-645-2700*

USA-48AD 8
(Ed. 1/97)